Mr. Justice Merrick
delivered the opinion of the court.
*299 This was an appeal from an order of the Orphans’ Court, directing the issues upon a caveat to the will of David Mclntire, deceased.
Mclntire had' died early in April, 1884, and on the 8th of April, a few days after his death, a will was propounded in the Orphans’ Court, and was admitted to probate in common form.
Letters of administration were granted and certain proceedings taken, for the purpose of settling up the estate.' At the end of about fifteen months, the sole surviving brother of the decedent filed his petition in the Orphans’ Court, caveating the will and asking for plenary proceeding for the purpose of testing the validity of the will.
In that state of the case the administrator of the decedent filed his answer, setting up that the brother had been guilty of laches, by allowing the administration to proceed for fourteen months after full knowledge on his part, and that those laches were a complete bar to the application for a caveat and the determination of the question of the will in solemn form.
The probate court took a different view, and ordered issues to go for the purpose of establishing whether or not the supposed paper was in truth the will of the decedent. From that order the administrator appeals, and he raises two questions in this court, very momentous, indeed, if there were any substance in either of them.
The first question he raises is that, by reason of the terms of the codification or revision of the laws of the District, the probate court was shorn of the vast mass of its powers, because in the revision, at section 930, chapter 21, of the Revised Statutes of the District, the section providing for the register of wills leaves out all that part of the Act of the 21st of June, 1810, which added the Probate Court to the Supreme Court of the District of Columbia, except certain provisions with regard to the register of wills, and certain other provisions specially provided in other parts of the Code touching the proceedings of executors, and touching the proceedings of guardian and ward.
*300 Now it would be a very serious thing, if there were any foundation to it, to have the probate court entirely stricken down and to have no tribunal vested with the particular functions which belong to the administration of the affairs of decedents.
The vice of the argument of the counsel consists in reasoning from the particular up to the general, instead of reasoning from the general down to the particular. If we look at section 89, every possible difficulty will be removed, which would enter the mind of a lawyer by reason of the omission from sections 929 and 930 of the entire provisions of the Act of June 1,1870, which had brought the Orphans' Court into and made it a part of the Supreme Court of the District of Columbia.
Section 89 is in these words:
“ The judicial courts of the District shall remain as organized on the 21st day of February, 1871, until abolished or changed by Congress.”
On the 21st day of February, 1871, the Act of June 21, 1870, in its entirety, was in force with all its provisions, giving all the antecedent jurisdiction of the Orphans’ Court to the Supreme Court of the District of Columbia. When in that state of the case, in 1874, the new revision or enactment is, “ That the judicial courts of the District shall remain as organized on the 21st day of February, 1871;” that is an adoption into the revision of 1874, of all the faculties which belong to the court as of that time; and it dispensed therefore with the necessity of repeating at sections 929 and 930 the detail of the jurisdiction which had been conferred by the act of June 21, 1870, and the only object which the reviser could have had in repeating in sections 929 and 930 any part of the Act of June, 1870, after that sweeping provision, was this: that if it had stopped with the terms I have used, u The judicial courts shall remain as organized on the 21st day of February, 1871,” it might have been inferred that there was some purpose to abolish the special powers of the register of wills, and they might have been considered as absorbed in *301 the functions belonging to the clerk of the Supreme Court of the District of Columbia; and it was for the purpose of keeping alive and removing all doubt as to the integrity of the office of register of wills that sections 929 and 930 were put in the Revised Statutes as they appear now, but not with any view at all of taking away any of the powers of the Orphans’ Court exerted by the Supreme Court of the District of Columbia at one of its special terms on February 21, 1871.
The objection therefore to the jurisdiction must fall entirely, and we must consider the question as settled and fully at rest, that the Supreme Court of the District of Columbia, in special term, has all the powers and all the faculties that the Orphans’ Court at any time possessed by virtue of the statutes existing anterior to this codification.
The second objection is that the party has lost his remedy by laches. That is equally as untenable as the first. The thirteenth section of the second sub-chapter of the Act of 1798, provides that where a will has been admitted to probate in common form, it may be open to contest by any party interested; and it gives in that section no limitation of time to the contest. It leaves the law upon that subject and as to limitation, as it stood before.
In point of fact there was no occasion for putting that provision into the statute at all, except out of the abundant caution taken by the draftsman of that law, to exclude any possible conclusion which might have been drawn from the other section of the law, which says that the Orphans’ Court shall exercise no incidental power, and which is not expressly given by the statute itself; and inasmuch as the power to take probate in common form had been previously given, if the statute had remained silent about the power to review it upon a caveat in solemn form, the argument might have been drawn that the Orphans’ Court had not that power which previously had belonged to all the civil and ecclesiastical courts having jurisdiction over the subject of wills. It was for this purpose alone that expression was given in that form to the power of the Orphans’ Court to review a *302 common probate by having a proper plenary proceeding for the purpose.
The capacity to review a probate was never limited in the ecclesiastical courts at any time. It has always been the doctrine of the ecclesiastical courts that a will was so sacred, a thing so touching the consciences of men, that it was to be carefully guarded; and whenever it appeared, under any circumstances, that a particular matter had been the object of testamentary disposition, the ecclesiastical courts took care to see that testamentary disposition fully carried out and preserved. Hence, there was no such thing known in the ecclesiastical courts as the Statute of Limitations, touching the establishment of a will or the revision of a supposed will which had once been in part established or adopted by the ecclesiastical court. To show that this has been the recognized law and the uniform practice, both in this District and in the State of Maryland, it is only necessary to refer to two decisions of the Court of Appeals.
I refer to the case of Clagett vs. Hawkins, to be found in 11 Md., 381. I read a single passage:
“ The proposition that no lapse of time will exclude the inquiry as to whether certain papers constitute the will of a party is supported by almost any number of authorities; that of Finucane vs. Gayfere, 1 Eccl. Rep., 425 (3 Phill., 405), will suffice for this case.”
And in 33 Maryland, 569, the case of O’Neill vs. Smith, which, by the way, was a case where there had been a nuncupative will established and probated by the Orphans’ Court, and full administration had occurred and the estate had been settled under that nuncupative will, after the end of nearly two years the nunmrpative will was assailed by caveat and it was overthrown. Now if there were any case where laches ought to have been applicable, it would be in the case of a nuncupative will which rests, as we know, only in the memory of witnesses, and never is put in writing, except after death, by the Orphans’ Court, upon the statement of witnesses; and if they should happen to die, there *303 would be uo possible means of determining whether or not that were the'true will of the party.
But even in a case of that sort the courts have held that lapse of time was not an impediment to the revocation and overthrow of a will. At page 574, the court says:
“ The only remaining question is whether the appellants, by reason of any delay or laches on their part, have lost their right to assail this will? Without intending to admit that mere lapse of time would operate as a bar in any case, we are of opinion that the appellants are not pi’ecluded by any supposed delay from contesting the validity of this will.”
In the light of these authorities and the reasonings which I have given, it appears to the court that the plea of laches cannot prevail in this or in any similar case. This disposes of all the questions.
The appeal is, therefore, not sustained, and the case is sent back to the Orphans’ Court for further proceedings in conformity to the action already taken in that tribunal.